IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CASE NO. 4:20-CR-00045-SDJ-CAN-1 |
| | § | |
| JAMES TAYLOR ROSE | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendant James Taylor Rose's ("Defendant") Motion to Suppress [Dkt. 33]. On October 20, 2020, the Court conducted an evidentiary hearing and heard oral argument from both Defendant and the Government [Dkts. 41; 43]. After considering the Motion to Suppress [Dkt. 33], the Government's Response [Dkt. 37], all other relevant filings, as well as the evidence and oral argument presented at Hearing, the Court recommends Defendant's Motion to Suppress [Dkt. 33] be **DENIED**.

## BACKGROUND

**I.    THE INDICTMENT**

On February 12, 2020, Defendant was indicted for violations of 21 U.S.C. § 841 (Possession with Intent to Distribute or Dispense a Controlled Substance), 18 U.S.C. § 924(c) (Possession or Carrying of a Firearm in Furtherance of Drug Trafficking), and 18 U.S.C. § 922(g) (Possession of a Firearm by a Prohibited Person) [Dkt. 1]. Count One alleges Defendant

> did intentionally and knowingly distribute and possess with intent to distribute or dispense less than 50 kilograms of a mixture or substance containing a detectable amount [of] marijuana; a mixture or substance containing a detectable amount of alprazolam, lorazepam, and clonazepam, all Schedule IV controlled substances; and less than 500 grams of a mixture or substance containing a detectable amount of cocaine.

[Dkt. 1 at 1]. Counts Two and Three allege Defendant was knowingly in possession or carried certain firearms while engaged in such activities [Dkt. 1 at 2-3].

## II.     MOTION TO SUPPRESS

On September 28, 2020, Defendant filed the instant Motion to Suppress, which asks the Court to "suppress any and all evidence, including any marijuana, firearms, any and all physical, documentary, and oral or written statements of the Defendant which were obtained from the illegal entry and search of his residence, along with any and all statements or information obtained from questioning the Defendant after his arrest," and after *Miranda* warnings were given [Dkt. 33 at 2-3, 6].[1]

Underlying the Motion to Suppress is a search warrant signed by Sixth District Court Judge R. Wesley Tidwell in Lamar County, Texas, on March 19, 2019, at 8:42 a.m. [Dkts. 33 at 2; 33-1; 37 at 5; 43 at 28], authorizing the search of Defendant's residence [Dkts. 33 at 2-3; 33-1; 37 at 1-4]. Defendant advances two arguments in support of his Motion to Suppress [Dkt. 43 at 6-7]. First, Defendant argues that the two trash pulls from his residence, collectively, are insufficient to establish probable cause—particularly, given that "a review of the affidavit for the search warrant does not show any law enforcement officer observing [Defendant] involved in any criminal activity or evidence tending to show that a particular person committed an offense" [Dkt. 33 at 3, 5]. Stated differently, Defendant argues the search warrant is facially invalid because it lacks probable cause. Defendant further argues the good faith exception "is not implicated in this case" because the warrant fails under the third *Leon* factor: "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" [Dkt. 33 at 5].[2] At Hearing, the Court confirmed Defendant advances only these two bases for suppression [Dkt. 43 at 6-7].

---

[1] Defendant does not contest that he was read his *Miranda* warnings.
[2] At the October 20, 2020 Hearing, the Court afforded Defendant two weeks to submit supplemental briefing regarding Defendant's request to suppress any post-*Miranda* statements, or to otherwise further brief and/or provide applicable authority as to the bases advanced for suppression [Dkts. 41; 43 at 7-8, 68-69]. Defendant declined to provide supplemental briefing; the Court deemed the matter ripe after November 3, 2020. In light of Defendant's failure to brief any request for suppression of post-*Miranda* statements, the Court does not further address Defendant's request to suppress any and all statements or information obtained from questioning Defendant after his arrest.

REPORT AND RECOMMENDATION – Page 2

The Government filed its Response on October 9, 2020 [Dkt. 37]. The Government rejoins the Motion to Suppress must be denied "[b]ecause the search warrant affidavit contains sufficient indicia of probable cause to believe that evidence of unlawful possession and/or distribution of marijuana would be located inside" Defendant's residence [Dkt. 37 at 5]. The Government also avers that "the Paris Police Department acted in good faith in relying on the issuance of the search warrant by Judge Tidwell"; thus, suppression "would not deter future law enforcement 'misconduct'" [Dkt. 37 at 5, 10].

The Court conducted an evidentiary hearing on October 20, 2020 [Dkts. 41; 43]. At Hearing, the Government called Paris Police Department Detective Chris Mayfield [Dkt. 43 at 9]. No other witnesses were presented [Dkt. 43 at 61]. The Hearing transcript was filed on October 27, 2020 [Dkt. 43]. The unobjected to exhibits are as follows:

> Exhibit A: Signed Search Warrant (March 19, 2019) [Dkt. 33-1 at 1-2] and Signed Mayfield Affidavit in Support of the Search Warrant (March 19, 2019) [Dkt. 33-1 at 3-8];
>
> Exhibit B: Search Warrant Return and Inventory (March 25, 2019) [Dkt. 33-2];
>
> Exhibit 1: Signed Mayfield Affidavit in Support of the Search Warrant (March 19, 2019) [Dkt. 42-1];
>
> Exhibit 2: Signed Search Warrant (March 19, 2019) [Dkt. 42-2 at 1-2] and Search Warrant Return and Inventory (March 25, 2019) [Dkt. 42-2 at 3-4]; and
>
> Exhibit 3: Image of the Items Listed in the Search Warrant Return and Inventory [Dkt. 42-3].

The underlying facts relevant to Defendant's Motion to Suppress are summarized as set forth below.

### III. THE SEARCH WARRANT

The search warrant, which authorized the search of Defendant's home, is supported by an affidavit drafted and signed by Detective Mayfield, who was the sole witness presented at Hearing

[Dkts. 33-1 at 8; 43 at 9, 19]. The affidavit generally describes Detective Mayfield's credentials and outlines the background of his investigation into Defendant's alleged criminal activity in the Eastern District of Texas [Dkt. 33-1 at 4-8]. Detective Mayfield specifically attests:

> Based on AFFIANT'S training and experience, AFFIANT has probable cause to believe the occupant(s) of the Suspect Location 3300 Pine Bluff Street Paris Lamar County Texas are in the possession of controlled substances, to-wit: Marijuana, as well as the instrumentalities, devices and equipment for the storage, transportation and delivery of Marijuana, including, but not limited to scales for the measurement and weighing of Marijuana drug paraphernalia and U.S. currency and therefore respectfully requests that a search warrant for the described property, including any and all outbuildings and motor vehicles located on or at said location, be issued on the information provided.

[Dkt. 33-1 at 8].

Detective Mayfield continues to outline that on February 11, 2019, Detective Mayfield and Detective Forman received information from a fellow sworn police officer, Officer Ricks, who had observed "a large amount of traffic" at Defendant's residence consistent with narcotics sales [Dkt. 33-1 at 6]. Officer Ricks believed Defendant "was possibly selling marijuana from the residence" [Dkt. 33-1 at 6]. Detective Mayfield obtained a Texas Driver's License Return for Defendant, which confirmed that Defendant resided at the location [Dkt. 33-1 at 6]. Detective Mayfield detailed how Defendant had previously been arrested for possession of marijuana, the same narcotic Officer Ricks believed was being sold at the residence [Dkt. 33-1 at 6]. The residence is listed as being owned by Theresa Rose, the individual Defendant listed as emergency contact when previously arrested for possession of marijuana [Dkt. 33-1 at 6]. Detective Mayfield thereafter conducted two "trash pulls" of "the trash receptacle on the curb at the end of the driveway as placed for public collection" at Defendant's residence [Dkt. 33-1 at 6-7].[3] The first

---

[3] The Fourth Amendment does not prohibit a warrantless search and seizure of garbage left for collection outside the curtilage of an individual's home. *California v. Greenwood*, 486 U.S. 35, 37 (1988).

trash pull included "two white colored plastic bags from the receptacle" [Dkt. 33-1 at 6-7]. Detective Mayfield lists the contents of the first trash pull as follows:

- Loose tobacco commonly discarded when rolling blunts
- 4 Swisher Sweets package commonly discarded when rolling blunts
- 3 blunt roaches containing marijuana
- Mail bearing the address 3300 Pine Bluff
- Vacuum sealed baggie containing green marijuana stem
- Buddha Bear Tetrahydrocannabinol vape pen wrapper

[Dkt. 33-1 at 7]. Detective Mayfield detailed his familiarity with vacuum sealed baggies from prior narcotics investigations, noting the baggies are commonly used to ship marijuana to Lamar County, Texas, from "source states" like California and Colorado and to avoid detection [Dkt. 33-1 at 7].

The second trash pull, conducted by Detective Mayfield and a different officer, Detective Crawford, included "three white colored plastic bags" [Dkt. 33-1 at 7]. Detective Mayfield lists the contents of the second trash pull as "10 vacuum bags containing marijuana residue," mail with Defendant's address, and "6 Swisher Sweets wrappers containing loose tobacco commonly discarded when rolling blunts" [Dkt. 33-1 at 7]. Detective Mayfield further lists that these "vacuum bags are similar to the ones recovered in the first trash pull and contain what appears to [be] marijuana residue" [Dkt. 33-1 at 7]. Drawing upon his experience as a law enforcement officer for six years and prior narcotics investigations, Detective Mayfield stated in his affidavit that he "has seen similar bags containing ½ pound increments of marijuana" [Dkt. 33-1 at 4, 7]. Detective Mayfield further explained

> A shipping label was recovered from the same bag bearing a weight of 5lbs 8 oz. This would confirm that the vacuum bags would contain approximately ½ increments of marijuana and were possibly shipping from a source state. AFFIANT later tracked the tracking number on the package and discovered it originated in [California]. AFFIANT knows that [California] is a source state for marijuana.

[Dkt. 33-1 at 7].[4] In the final section of the affidavit, Detective Mayfield asks for the issuance of a warrant to search Defendant's residence for said drugs kept, prepared, or manufactured in violation of Texas law and to seize the same [Dkt. 33-1 at 8].

The search warrant was issued on March 19, 2019, at 8:42 a.m. [Dkt. 33-1 at 2] and executed that same date [Dkt. 33-2]. A return was provided indicating as follows: (1) "approximately 6 pounds of marijuana"; (2) ">1G<4G of powder cocaine"; (3) "<1G of MDMA"; (4) "<28G of Alprazolam"; (5) "<28G of Lorazepam"; (6) "<28G of Clonazepam"; (7) "approximately 4 ounces of THC wax"; (8) Promethazine Codeine syrup; (9) Promethazine; (10) drug paraphernalia; (11) one shotgun; (12) three handguns; (13) ammunition; and (14) $9,554.00 [Dkt. 33-2 at 2]. Defendant seeks suppression of each of these items.

## ANALYSIS

To reiterate, Defendant moves to suppress all evidence and statements obtained "from the illegal entry and search of his residence" on March 19, 2020 [Dkt. 33 at 2-3, 6], advancing both that the search warrant lacks probable cause and the good faith exception does not apply [Dkt. 43 at 6-7].

### I.   THE FOURTH AMENDMENT FRAMEWORK AND THE SUPPRESSION REMEDY

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. CONST. amend. IV. The exclusionary rule, which permits criminal defendants to seek exclusion (suppression) of evidence obtained through "illegal search and seizure," provides one vehicle through which citizens may "effectuate [this] Fourth Amendment right." *United States v. Calandra*, 414 U.S.

---

[4] At Hearing, the Government and Detective Mayfield himself clarified that listing Colorado in his affidavit was an error; instead, it should have listed California [Dkt. 43 at 5, 24-25, 27]. Notwithstanding, at Hearing no Party disputed the assertion that it is well understood that both Colorado and California are considered source states as marijuana is legal under such states' laws [Dkt. 43 at 11, 25].

338, 347 (1974) (noting that this rule "applies as well to the fruits of the illegally seized evidence"). For decades, the Supreme Court has characterized exclusion through suppression as an "extreme sanction" that courts should apply only sparingly. *United States v. Leon*, 468 U.S. 897, 926 (1984); *see also Herring v. United States*, 555 U.S. 135, 141 (2009) (warning that application of the exclusionary rule exacts "substantial social costs"); *Hudson v. Michigan*, 547 U.S. 586, 591 (2006) ("Suppression of evidence, however, has always been our last resort, not our first impulse.").

A court must engage in a two-part inquiry in deciding whether to suppress evidence: it generally must ask first whether the good faith exception applies (and, in turn, whether any of the exceptions to that rule applies) and then ask whether probable cause supports the warrant in question. *Leon*, 468 U.S. at 924-25; *see also United States v. Allen*, 625 F.3d 830, 835 (5th Cir. 2010); *United States v. Tovar*, 719 F.3d 376, 385 n.8 (5th Cir. 2013). Indeed, courts generally consider whether probable cause supports the warrant only in the absence of good faith. *See United States v. Stalnaker*, 571 F.3d 428, 436 (5th Cir. 2009); *United States v. Craig*, 861 F.2d 818, 820 (5th Cir. 1988) ("Principles of judicial restraint and precedent dictate that, in most cases, we should not reach the probable cause issue if . . . the good-faith exception of *Leon* will resolve the matter.").

"Under the good-faith exception, evidence obtained during the execution of a warrant later determined to be deficient is admissible nonetheless, so long as the executing officers' reliance on the warrant was objectively reasonable and in good faith." *United States v. Payne*, 341 F.3d 393, 399 (5th Cir. 2003) (citing *Leon*, 468 U.S. at 921-25). Normally, the issuance of a warrant by a magistrate is sufficient to establish an officer's good faith. *United States v. Pena-Rodriquez*, 110 F.3d 1120, 1130 (5th Cir. 1997). But good faith cannot be established if one of the following four circumstances is present:

> (1) When the issuing magistrate was misled by information in an affidavit that the affiant knew or reasonably should have known was false;
> (2) When the issuing magistrate wholly abandoned his judicial role;
> (3) When the warrant affidavit is so lacking in indicia of probable cause as to render official belief in its existence unreasonable; and
> (4) When the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that executing officers cannot reasonably presume it to be valid.

*United States v. Beverly*, 943 F.3d 225, 232-33 (5th Cir. 2019) (citing *United States v. Woerner*, 709 F.3d 527, 533-34 (5th Cir. 2013)).  In considering whether the good faith exception applies, the Court does not attempt to determine an officer's subjective belief regarding the validity of the warrant.  *Leon*, 468 U.S. at 922 n.23.  Relevant herein, where a warrant is supported by more than a bare-bones affidavit, an officer may rely in good faith on the warrant's validity.  *United States v. Hall*, No. 1:13-CR-112(1), 2014 WL 12646032, at *3 (E.D. Tex. May 1, 2014), *report and recommendation adopted*, No. 1:13-CR-112(1), 2014 WL 12647763 (E.D. Tex. June 3, 2014), *aff'd*, 654 F. App'x 653 (5th Cir. 2016); *see also United States v. Taylor*, No. 4:17-CR-9-MAC-CAN, 2018 WL 5305569, at *5 (E.D. Tex. Sept. 17, 2018), *report and recommendation adopted*, No. 4:17CR9, 2018 WL 4579808 (E.D. Tex. Sept. 22, 2018).

"A defendant normally bears the burden of proving by a preponderance of the evidence that the challenged search or seizure was unconstitutional."  *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005); *see also United States v. Iraheta*, 764 F.3d 455, 461 (5th Cir. 2014).  A defendant also bears the "burden of showing that the good faith exception to the exclusionary rule does not apply[.]"  *United States v. Perez*, No. 6:17-35, 2018 WL 781953, at *1 (S.D. Tex. Feb. 7, 2018) (citing *United States v. Jarman*, 847 F.3d 259, 264 (5th Cir. 2017)); *see also United States v. Guerra*, No. 2:17-CR-00137-O, 2018 WL 8805227, at *4 (N.D. Tex. Oct. 3, 2018) (citing *United States v. Rosa*, 721 F. App'x 403 (5th Cir. 2018)) ("When challenging the application of the good

faith exception, Defendant carries the burden to prove by a preponderance of the evidence that it does not apply.").

The Court first addresses the good faith exception. *See United States v. Gentry*, 941 F.3d 767, 779 (5th Cir. 2019) (stating a court should only should only reach the probable-cause inquiry if this inquiry "presents a novel question of law, resolution of which is necessary to guide future action by law enforcement officers and magistrates"). At Hearing, counsel confirmed that if the Court finds the good faith exception applies, the Court need not continue to the further basis urged—whether or not probable cause exists [Dkt. 43 at 8].

## II.     THE GOOD FAITH EXCEPTION

### *Bare Bones Affidavit/No Indicia of Probable Cause*

Defendant contends that the affidavit at issue is so facially deficient, so bare bones, that the good faith exception cannot apply [Dkts. 33 at 5; 43 at 6-7]. "An affidavit supporting a warrant that is 'so lacking in indicia of probable cause' is often referred to as a 'bare bones' affidavit." *United States v. Bell*, 382 F. Supp. 3d 574, 580 (N.D. Tex. 2019) (quoting *United States v. Pope*, 467 F.3d 912, 920 (5th Cir. 2006)). A bare bones affidavit is "an affidavit that contains 'wholly conclusory statements, lacking the facts and circumstances from which a magistrate can independently determine probable cause.'" *United States v. Jackson*, No. 2:19-CR-030-D, 2019 WL 3429105, at *3 (N.D. Tex. July 30, 2019) (quoting *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992)); *see also United States v. Pope*, 467 F.3d 912, 920 (5th Cir. 2006) ("Generally, examples of 'bare bones' affidavits include those that merely state that the affiant 'has cause to suspect and does believe' or 'has received reliable information from a credible person and does believe' that contraband is located on the premises.") (alterations omitted). "Whether an affidavit is bare bones is determined under the totality of the circumstances[.]" *United States v. Godfrey*,

805 F. App'x 318, 318-19 (5th Cir. 2020) (citing *United States v. Fisher*, 22 F.3d 574, 578 (5th Cir. 1994)). "The issuing judge must be allowed to draw reasonable inferences from the affidavit, and the ultimate determination of the affidavit's adequacy is entitled to great deference on review." *Hall*, 2014 WL 12646032, at *3 (citing *United States v. May*, 819 F.2d 531, 535 (5th Cir. 1987)).

Again, here, Defendant points to the contents of the two trash pulls and the fact that law enforcement did not observe him "involved in any criminal activity or evidence tending to show that a particular person committed an offense," arguing the trash pulls "did not uncover sufficient probable cause for a search warrant to be granted" [Dkt. 33 at 3, 5]. The Government disagrees, contending probable cause that marijuana would be located at Defendant's residence clearly exists from the four corners of the affidavit and that the failure to directly observe Defendant engaged in criminal activity is both unnecessary and immaterial to the Court's determination on the issue of good faith [Dkt. 37 at 5, 7-8].

Contrary to Defendant's assertions, the affidavit in question constitutes more than a "bare bones" affidavit. It goes beyond simply stating Detective Mayfield's suspicion or general belief in cases of this nature or type. The affidavit contains numerous specific facts regarding the investigation and alleged criminal activity at the residence, establishing a bridge or nexus to the residence and the evidence sought, including Officer Ricks's (a trained, sworn police officer's) observation of "a large amount of traffic" at Defendant's residence consistent with narcotics use/sale, two separate trash pulls and their contents similarly consistent with instruments of narcotics use/sale (including actual remnants of marijuana), and Detective Mayfield's own training and experience [Dkt. 33-1 at 3-8; 42-1]. Even more specifically, the affidavit detailed each of the following: (1) Officer Ricks's observation of "a large amount of traffic" at Defendant's residence; (2) Officer Ricks's belief that Defendant "was possibly selling marijuana from the residence";

(3) the Texas Driver's License Return that confirmed Defendant resided at the residence; (4) Defendant's prior marijuana-related arrest;[5] (5) the loose tobacco and Swisher Sweets, which are "commonly discarded when rolling blunts," from the first trash pull; (6) blunt roaches containing marijuana from the first trash pull; (7) a vacuum sealed bag containing marijuana stem from the first trash pull; (8) Buddha Bear Tetrahydrocannabinol vape pen wrapper from the first trash pull; (9) mail associated with Defendant's address from the first trash pull;  (10) ten vacuum bags containing marijuana residue from the second trash pull and similar to the first trash pull; (11) six Swisher Sweets wrappers containing loose tobacco, which are "commonly discarded when rolling blunts," from the second trash pull; (12) a shipping label associated with Defendant's address from a source state in the second trash pull; (13) Detective Mayfield's familiarity with vacuum sealed bags and shipping from source states; and (14) Detective Mayfield's experience investigating marijuana and other narcotics [Dkts. 33-1 at 3-8; 42-1].

Based on the affidavit presented to the issuing judge, the Court cannot conclude "a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." *See Allen*, 625 F.3d at 835.  The warrant affidavit is not "so lacking in indicia of probable cause as to render official belief in its existence unreasonable." *See Beverly*, 943 F.3d at 232-33.  Unlike a situation where the affiant merely "has cause to suspect and does believe," Detective Mayfield's affidavit drew upon the observations of another independent law

---

[5] Defendant briefly argues during Hearing and without authority that the prior arrest should not be considered in the probable cause inquiry [Dkt. 43 at 64].  This argument is without merit. *See United States v. Jackson*, No. 3:19-CR-00200-01, 2020 WL 930275, at *14 (W.D. La. Feb. 11, 2020) (concluding probable cause for an arrest warrant was present based on a witness' observation of the defendant in possession of a firearm and based on the defendant's criminal history), *report and recommendation adopted*, No. 3:19-CR-00200-01, 2020 WL 930119 (W.D. La. Feb. 25, 2020); *Kohler v. Englade*, 470 F.3d 1104, 1111 (5th Cir. 2006) ("[T]he use of prior arrests and convictions can be helpful in establishing probable cause, especially where the previous arrest or conviction involves a crime of the same general nature as the one the warrant is seeking to uncover[.]"); *United States v. McSween*, 53 F.3d 684, 686 (5th Cir. 1995) (concluding there was probable cause to search the vehicle based in part on law enforcement's knowledge of the defendant's prior narcotics-related arrests).

enforcement officer, his own personal observations, his training, his experience, and evidence from two separate trash pulls; based upon the totality of the evidence the good faith exception applies.[6]

At Hearing, Defendant cited two cases, neither of which compels a contrary result [Dkt. 43 at 62-65]. In *United States v. Lyles*, the Fourth Circuit, in concluding the good faith exception did not apply, found "trash pull evidence did not adequately support the warrant to search defendant's home for marijuana possession." 910 F.3d 787, 792, 796 (4th Cir. 2018). There, unlike here, a single trash pull on a single day was performed, revealing *only* "three empty packs of rolling papers, a piece of mail addressed to the home, and three marijuana stems." *Id.* at 793. But unlike in *Lyles*, the instant case does not involve "a single trash pull," but instead involved two trash pulls, on two separate occasions, which revealed more than simply three marijuana stems and three empty packs of rolling papers; further, the instant case is supported by an officer's independent observations of foot traffic at the residence consistent with narcotics sales—making it more likely reflective of "recurrent or ongoing activity." *See id.* at 794.

The other case cited by Defendant, *United States v. Shaw*, supports, rather than undermines, the application of the good faith exception in the instant cause. No. 19-CR-00157-01, 2020 WL 3816312, at *6 (W.D. La. Feb. 21, 2020), *report and recommendation adopted*, No. 19-CR-00157-01, 2020 WL 3806297 (W.D. La. July 6, 2020). In *Shaw*, the Western District of Louisiana, as the

---

[6] If *Leon* does not apply, a court must then look to whether "the magistrate issuing the warrant had a 'substantial basis for believing there was probable cause for the search.'" *Allen*, 625 F.3d at 835; *see also Davis*, 226 F.3d at 351. "Probable cause . . . is not a high bar: It requires only the kind of 'fair probability' on which reasonable and prudent people, not legal technicians, act." *Kaley v. United States*, 571 U.S. 320, 338 (2014) (quoting *Florida v. Harris*, 568 U.S. 237, 244 (2013)) (internal quotation marks and alterations omitted). Because the Court concludes the good faith exception applies, the Court need not address whether the magistrate had a substantial basis for finding probable cause. *See United States v. Cherna*, 184 F.3d 403, 407 (5th Cir. 1999) ("If the good-faith exception applies, we need not reach the question of probable cause."); *Gentry*, 941 F.3d at 779 (stating a court should only should only reach the probable-cause inquiry if this inquiry "presents a novel question of law"); *United States v. Holley*, No. 4:12CR29, 2014 WL 12703784, at *2 (E.D. Tex. May 21, 2014), *report and recommendation adopted*, 4:12CR29, 2014 WL 12709381 (E.D. Tex. May 29, 2014). Indeed, Defendant, at Hearing, confirmed the Court need not go further if the Court concludes the good faith exception applies [Dkt. 43 at 8].

Court has here, distinguished *Lyles* by noting law enforcement in *Shaw* "found more than just small amounts of marijuana"—law enforcement also found "vacuum-sealable bags," confirmed through field-testing that the residue was indeed marijuana, observed "a history of unusual traffic to and from the residence," and discovered the defendant, who lived at the residence, had a criminal history involving narcotics. *Id.* Thus, the Western District of Louisiana concluded "the affidavit provided probable cause for the issuance of the search warrant" and that the officer "acted in objective good faith in relying on the warrant." *Id.* at *7. Although the record does not reflect the marijuana was field-tested in the instant case, Detective Mayfield's affidavit detailed three of the four other factors the *Shaw* court considered: vacuum-sealable bags, traffic at the residence, and criminal history involving controlled substances. Thus, the instant case is more analogous to *Shaw* than *Lyles*.

In opposition to concluding the affidavit was not bare bones, Defendant also argues law enforcement did not personally observe him "involved in any criminal activity or evidence tending to show that a particular person committed an offense" [Dkt. 33 at 3]. But Defendant overlooks that the affidavit contains "facts which 'establish a nexus between the *house* to be searched and the evidence sought.'" *United States v. Laury*, 985 F.2d 1293, 1313 (5th Cir. 1993) (quoting *United States v. Freeman*, 685 F.2d 942, 949 (5th Cir. 1982)) (emphasis added). "A search warrant, unlike an arrest warrant, may issue, without the slightest clue to the identity of the criminal, if there is probable cause to believe that fruits, instrumentalities or evidence of criminal activity are located at the *place to be searched*." *United States v. Webster*, 750 F.2d 307, 318 (5th Cir. 1984) (emphasis added); *see also Jones v. United States*, 14 F. Supp. 3d 811, 818 (W.D. Tex. 2014). Consider *United States v. Simpson*, No. 3:09-CR-249-D-06, 2011 WL 721912, at *12 (N.D. Tex. Mar. 2, 2011). There, the defendant argued "no facts alleged in the affidavits connect him to

the alleged criminal activity." *Id.* The Northern District of Texas, however, stated "the relevant connection for probable cause is between the *places to be searched* and the alleged criminal activities." *Id.* (emphasis in original); *see also* U.S. CONST. amend. IV ("[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the *place* to be searched[.]") (emphasis added); *Illinois v. Gates*, 462 U.S. 213, 238 (1983) ("The task of the issuing magistrate is simply to make a practical, common-sense decision whether . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place."). Similar to *Simpson*, there is a clear nexus between the house to be searched and the evidence sought. *See also United States v. Nguyen*, 172 F. App'x 558, 561-62 (5th Cir. 2006) (finding that an affidavit that detailed observations from surveillance, information from a co-defendant, identified the defendant as owner of the residence, and included generalizations that "drug dealers often keep contraband in their residences" established a sufficient nexus to search the residence).[7]

In short, Defendant has not shown that the warrant affidavit was lacking in indicia of probable cause.

For the foregoing reasons, the Court finds Defendant has not carried his burden of demonstrating the good faith exception does not apply. Thus, the items seized pursuant to the search warrant should not be suppressed.

---

[7] Defendant further implied at Hearing the facts relied upon the affidavit do nothing more than show innocent behavior. At Hearing, for example, Defendant focused on certain of the items logged in connection with the trash pulls, Swisher Sweets and vacuum bags, which are in and of themselves not illegal [Dkt. 43 at 44, 63-65]. To the extent Defendant intended to make this argument, "innocent behavior" can still support an inference that a search of a home will yield evidence of criminal activity. *See United States v. Payne*, 341 F.3d 393, 401 (5th Cir. 2003) (finding an informant's statement that defendant had internet access at his residence helped support an inference that a search of the home might produce evidence of child exploitation); *Illinois v. Gates*, 462 U.S. 213, 245 at n.13 (1983) (indicating that "innocent behavior frequently will provide the basis for a showing of probable cause"). And again, the basis for searching Defendant's residence in the affidavit is not limited to Swisher Sweets and vacuum sealed bags. The affidavit relied on a range of information from the investigation, including, but not limited to, the foot traffic at Defendant's residence, blunt roaches containing marijuana from the first trash pull, a vacuum sealed bag containing marijuana stem from the first trash pull, ten vacuum bags containing marijuana residue from the second trash pull and similar to the first trash pull, and a shipping label tied to the residence and from a source state [Dkt. 33-1]. *See Taylor*, 2018 WL 5305569, at *8.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court recommends Defendant James Taylor Rose's Motion to Suppress [Dkt. 33] be **DENIED**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 17th day of November, 2020.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE